IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| SYLVIA GALAMBOS & Ragnhild Galambos, guardian ad litem, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 03-768-KI *(Lead Case)* |
| vs. | ) ) | OPINION AND ORDER |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. and | ) ) ) | |
| McKENZIE LEIGH FORAKER, HARRIET JO FORAKER, guardian ad litem, | ) ) ) ) | Civil Case No. 03-1003-KI *(Consolidated case)* |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

Page 1 - OPINION AND ORDER

James R. Jennings
Peggy Sue Foraker
Jennings & Foraker, LLP
1550 N.W. Eastman Parkway, Suite 275
Gresham, Oregon  97030

    Attorneys for Plaintiffs

Karin J. Immergut
United States Attorney
District of Oregon
Kenneth C. Bauman
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

    Attorneys for Defendant

KING, Judge:

I.    General Findings

The consolidated case of <u>Sylvia Galambos v. United States of America</u> and <u>McKenzie Foraker v. United States of America</u> was tried to the court without a jury on October 10, 11, 12 and 16th.  The court has considered the testimony, exhibits and arguments of the parties and finds as follows:

The accident in question occurred on August 19, 1997 when a vehicle driven by the government's employee struck the rear of the Honda vehicle in which plaintiffs were passengers. The impact caused the Honda vehicle to strike the vehicle in front of it, which caused each car in the stopped line of traffic to strike the vehicle in front of it.  The description of the collision and testimony of the individuals involved in the accident support a finding of a significant impact. While it was not a "major" impact, the nature of the impact was sufficient to cause injuries of the nature of those alleged.  There was no negligence shown on the part of the driver of the vehicle in which plaintiffs were passengers and the court finds that the defendant's employee was negligent and that he caused the accident in question.

This court has jurisdiction of the claims under the Federal Tort Claims Act. Plaintiffs have complied with the procedural requirements of the Act.

II.     Claim of Sylvia Galambos

With regard to the injuries claimed by Sylvia Galambos, the court finds as follows:

1) Galambos had no preexisting cervical, lumbar or thoracic spine symptoms, and there is no evidence of any subsequent cause of the injuries.

2) As a result of the accident, Galambos suffered injury to her neck and back which has resulted in pain and discomfort in her cervical spine, her lumbar spine, and her thoracic spine. Given the length of time the pain has continued and based on the testimony of her treating physicians, it is probable that she will continue to have some symptoms in the future.

3) Galambos has been treated and examined by physicians who have reported neck and back pain based upon both objective and subjective signs and symptoms continuing to the present time. The plaintiff is a credible witness and the court finds that she does what she can to accommodate the pain and discomfort, but that she limits the number and level of involvement in activities due to her pain.

4) While there is some evidence of disc degeneration in her thoracic spine, the more likely cause of the continuing problems is an aggravation of a preexisting scoliosis (a lateral curvature of the spine) caused by the accident. No physician has testified to a reasonable medical certainty that surgical intervention will be required.

5) Galambos has incurred reasonable and necessary medical expenses in the amount of $20,816.61 for medical treatment. She has not suffered any wage loss to date and it is not probable that she will incur wage loss in the future as a result of this accident. Plaintiff will require some medical care in the future for periodic evaluations, physical therapy, pain medication, and possibly injections. Based on cost information obtained from the report of Michelle Neilsen, RN, the court finds that the present value of the reasonably probable future medical costs is $22,800.00.[1]

---

[1] In determining future medical costs for both plaintiffs, the court has assumed a life expectancy of 60 years and has used the present value factors set forth by plaintiffs' witness Dr. Robert Male.

Page 3 - OPINION AND ORDER

6) Galambos has suffered and will suffer in the future, noneconomic damages for pain, suffering and emotional distress in the reasonable amount of $ 180,000.00.

III.   Claim of McKenzie L. Foraker

With regard to the claim of injuries alleged by McKenzie Foraker, the court finds as follows:

1) Prior to the 1997 accident there is no evidence that Foraker suffered from cervical, lumbar or thoracic spine symptoms. Following the accident, plaintiff reported and received treatment for pain involving the cervical spine, and to a lesser degree, the thoracic and lumbar spine. Plaintiff has sustained the burden of proof that some injury to the mid and low back occurred in the course of the accident, but the nature and extent of the symptoms and continuing problems is not clear. Plaintiff was treated by numerous practitioners who reported different symptoms and arrived at differing conclusions. There is no clear pattern of lumbar and thoracic spine problems and no clear evidence of the need for medical care, other than possibly physical therapy, medication and injections.

2) At the time of their treatment or examination, many, if not all, of the treating physicians were not aware of the subsequent auto accident and injuries incurred therein by Foraker in September of 2003. At trial, some of the opinions regarding causation were given without knowledge of that accident, which was described as a significant accident by plaintiff's friend, Walter Raubeson. The treating physician, Dr. Minga Guerrero, D.C., had not previously treated Foraker but opined that she returned to her pre-2003 accident condition within 5 weeks.

Dr. Carolyn McMakin, a chiropractic physician, first saw Foraker in August of 2001 and treated her until approximately May of 2003. Pls.' Ex. 12 at 378-479. She was not called as a witness and the court cannot determine the nature and extent of Foraker's symptoms prior to the 2003 accident from the records. Dr. Guerrero's records reflect that at the visit to Good Samaritan Hospital on the day of the 2003 accident, a brain scan was performed. The court could not locate a record or a reference to the findings of that 2003 brain scan in the exhibits submitted. Plaintiff has not proven by a preponderance of the evidence that the injuries she suffered in the 2003 accident had no effect on her condition.

      3) Physicians called by the plaintiff testified that she had a mild traumatic brain injury as a result of the 1997 accident. Traumatic brain injuries are described as mild, moderate or severe. There is testimony that brain cells, if injured, can regenerate with stimulation and rehabilitation. Dr. Gregory O'Shanick testified that plaintiff has difficulty with some levels of concentration and some physical problems, primarily balance and speech and language difficulties. He opines that plaintiff suffered from Attention Deficit Disorder (ADD) before the accident and that this problem, combined with the mild traumatic brain injury, has resulted in difficulties above and beyond the problems she had previously. There is testimony that following the 1997 accident and following the 2003 accident, plaintiff had some problems with balance and stuttering.

      The effect of any brain injury, given the prior ADD, is not clear. Dr. Dennis Smith, a neurologist who testified at the request of defendant, opined that Foraker did not sustain a traumatic brain injury. Dr. Smith's report contains a detailed summary of the treatment and diagnoses made of Foraker up to the time of his evaluation in September 2004. Def.'s Ex. 109. He found that her complaints of difficulty concentrating, poor memory, difficulty with speech and impulsivity are consistent with the natural progression of her preexisting ADD diagnosed prior to the 1997 motor vehicle accident. He opined that it was unlikely that the motor vehicle accident caused a brain concussion sufficient to result in any deterioration of her cognitive abilities. He noted that the acute injury characteristics do not indicate a severe trauma, that there was no documented loss of consciousness, that her actions at the time of the accident were inconsistent with severe trauma, and that there were no focal neurological signs. He opined that if she had a traumatic brain injury, it was extremely mild.

      The examinations by Dr. Jim Johnson, a neuropsychologist, are significant. Pls.' Ex.12 at 295-308. Dr. Johnson diagnosed plaintiff with ADD four months prior to the motor vehicle accident. He updated his examination on December 18, 2000, approximately three years after the accident. There is no reference to a motor vehicle accident, a brain injury, or the reason for the examination at that time. His December 2000 impressions and summary were basically the same as his impressions and summary reflected in his April 1997 report. While Dr. Johnson was listed as a witness by the plaintiff on the subject of "her brain damage and PTSD," he was not called as a witness and his report does not discuss brain damage.

Page 5 - OPINION AND ORDER

It is further noted that the only witness who testified to observations of Foraker's pre-accident physical and mental condition, and compared it to her post-accident condition, was her mother Peggy Foraker. Galambos was not asked to compare Foraker's condition before and after the accident. Courtney Leonard, a witness who knew both plaintiffs at All Saints School and St. Mary's Academy, testified as to her observations of Galambos' conditions before and after the 1997 accident, but when asked about Foraker, stated that she noticed no difference between grade school and high school. Foraker's friend Walter Raubeson testified as to his observations since the summer of 2003 but he did not know her before that time. Peggy Foraker testified that she generally accompanied her daughter to medical examinations and the indications are that the history relied upon by the treating physicians came from her and plaintiff. Foraker did not testify at the trial.

Based upon the testimony of the plaintiff's expert witnesses, and the testimony that subsequent to the accident, Foraker had balance problems and some stuttering, which had not existed before, the court finds that as a result of the 1997 accident, plaintiff suffered a mild traumatic brain injury, but finds that it was very mild with limited effect on plaintiff's physical and mental abilities and capacity. This conclusion is based on the testimony of the physicians, the exhibits, and the records submitted, including the records of testing and the educational records from grade school and high school. The court specifically finds there is very little significant change in Foraker's testing and school performance prior to the accident and subsequent to the accident that can be attributed to the accident. It does appear that the better grades in her last two years at St. Mary's Academy may have been a result of accommodation by the school, but it also appears that accommodation was primarily necessary as a result of the preexisting ADD.

4) With regard to plaintiff's medical expenses, the court finds that plaintiff has incurred medical expenses since the date of the motor vehicle accident in the amount of $90,702.99. While the court has some question that all of this treatment was medically necessary, there is testimony which the court accepts that the charges were reasonable and were necessarily incurred as a result of the accident. The court accepts this premise on the assumption that, but for the accident, plaintiff would not have sought the treatment.

Page 6 - OPINION AND ORDER

The court finds that the present value of a reasonable award for future medical expenses for treatment and medication necessitated by the 1997 accident is $68,400.00.

5)  Given the preexisting ADD, the court cannot determine the nature and extent of any future household expenses or loss of earning capacity, which were caused by the minor traumatic brain injury.

6)  Foraker has suffered and will suffer in the future, noneconomic damages for pain and suffering and emotional distress in the amount of $300,000.00.

Plaintiffs may submit a judgment for the foregoing amounts.

IT IS SO ORDERED.

Dated this  25th  day of October, 2006.

    /s/ Garr M. King
Garr M. King
United States District Judge